# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| AARON MITCHELL, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 7:18-cv-01825-LSC |
| | ) | |
| CITY OF NORTHPORT, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Plaintiffs Aaron Mitchell ("Mitchell"), David Hemphill ("Hemphill"), Byron Claybrook ("Claybrook"), Michael Carter ("Carter"), Donny Curruth ("Curruth"), Jerry Pruitt ("Pruitt"), Cory Patterson ("Patterson"), and Todd Burroughs ("Burroughs") (collectively "Plaintiffs") bring suit against Defendants City of Northport, Northport Fire Organization ("NFO") and Fire Chief Bart Marshall("Chief Marshall").[1] Plaintiffs' claims arise from their alleged mistreatment by Defendants because they are not members of the NFO. The City of Northport and Chief Marshall have moved to dismiss Plaintiffs' Amended Complaint. (*See* Doc. 24.) Plaintiffs have timely filed their opposition. The motion

---

[1] The Court has been unable to find any indication that Defendant NFO has been served. Accordingly, the Court will dismiss Plaintiffs' claims against Defendant NFO without prejudice pursuant to Fed. R. Civ. P. 4(m) as more than 90 days has elapsed since the filing of both the initial and Amended Complaint.

is fully briefed and ripe for review. For the reasons stated below, Defendants' motion to dismiss (doc. 24) is due to be granted in part and denied in part.

## I.     Background[2]

During the time period in question, Plaintiffs worked at the Northport Fire Department, part of the City of Northport. The NFO is a domestic, non-profit corporation that has members who work at the Northport Fire Department. Plaintiffs' claims arise from their alleged mistreatment by Chief Marshall, who was hired by the City of Northport in 2013. Chief Marshall is Caucasian and is alleged to have been hired despite an acrimonious history. The City of Northport is specifically alleged to have hired Chief Marshall without conducting a background check. Each Plaintiff alleges that they were considered exceptional employees until Chief Marshall was hired. Plaintiffs allege that Chief Marshall and other NFO members have and continue to harass them because they were not members of the NFO.

In summer 2017, the City of Northport conducted a special investigation into Chief Marshall. The findings of this special investigation were reported to the Mayor, but the City of Northport did not take any of the recommended corrective

---

[2]     In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Plaintiffs' allegations contained in the Amended Complaint, and the Court makes no ruling on their veracity.

actions. Plaintiffs allege that since their participation in the special investigation, none of them have received promotions even though less qualified NFO members have been promoted.

Plaintiffs filed this action in September 2018, in the Circuit Court of Tuscaloosa County, Alabama. The case was then removed to Federal Court in November 2018. Plaintiffs allege that since they have filed suit, NFO members have subjected them to continued harassment and that no one has been disciplined for these actions. As part of this alleged harassment, Plaintiffs claim that an article regarding this suit was posted in the breakroom, bathroom, and locker room at some of the Northport Fire stations. In response to Plaintiffs' complaints regarding this harassment, Chief Marshall is alleged to have told Plaintiffs "[j]ust wait for the next article." (Doc. 17 ¶¶24, 36, 49, 61, 72, 81, 89, 105.).

As a result of these actions, Plaintiffs have brought suit against Defendants for negligent hiring and retaliation. In addition to these claims, some of the Plaintiffs have brought additional individual claims against Defendants. For the purpose of clarity, the Court details below the factual basis for each Plaintiff's claim.

### a. Aaron Mitchell

Mitchell, who is African American, brings an additional claim for race discrimination against Defendants. Mitchell was hired by the Northport Fire

Department in 2002. Mitchell alleges that since Chief Marshall was hired, he has been subjected to harassment by Chief Marshall that has included strict scrutiny of his work, and Chief Marshall implementing changes of procedures, policies, and practices at the Northport Fire Department. During this time period, Mitchell claims that he has not been provided with a copy of the harassment policy despite making multiple requests for the document.[3]

While working for the Northport Fire Department, Mitchell was involved in a verbal altercation with Todd Payne ("Payne") and four other firemen. Payne is Caucasian and a member of the NFO. Mitchell alleges that this altercation occurred because a lock that was on a locker was cut to retrieve property that Payne was allegedly wrongfully possessing. During this altercation, Payne threatened to bust the windows out of Mitchell's vehicle. According to Mitchell, Chief Marshall did not report the incident to Human Resources due to Payne's membership in the NFO. Chief Marshall then determined that Mitchell was at fault for the altercation. As a result of this determination, Chief Marshall suspended Mitchell and docked his pay for two (2) days. Payne was not reported to human resources or punished for his role in the altercation.

---

[3] Plaintiffs' Amended Complaint does not indicate who Mitchell asked or who refused to give him a copy of the policy. The Amended Complaint only alleges that "defendant willfully refused to provide the same to him." (*Id.* ¶12.)

Mitchell filed a grievance and an EEOC charge concerning this incident, but he asserts that his grievance was ignored. Mitchell alleges that since he filed his grievance concerning his incident with Payne, his work environment has become more hostile as he has been subjected to continued harassment by Chief Marshall and NFO members, which has included the use of threats and offensive language towards him. Mitchell also alleges that during the time in question he was directed to perform paramedic duties even though he is a firefighter. Mitchell alleges that even though he was performing the duties of a paramedic, he did not receive the same compensation. Accordingly, Mitchell demanded equal compensation. Mitchell alleges that in retaliation both for his demand of equal pay and his complaint regarding Chief Marshall's handling of his dispute with Payne, he was moved to another station in the middle of his shift.

### b. David Hemphill

Hemphill, who is African American, also alleges that Defendants discriminated against him due to his race. Hemphill was hired by the Northport Fire Department in 2000. Hemphill, in addition to his duties at the Northport Fire Department, is a member of the Alabama National Guard. Hemphill is the only African American employee entitled to a military leave of absence pursuant to Ala. Code § 31-2-13.

In October 2015, Chief Marshall is alleged to have cut Hemphill's military leave from 21 to 7 days. Hemphill complained to Chief Marshall about this decision and pointed out to Chief Marshall that he could not choose the days he had to report to duty. Chief Marshall responded to Hemphill's complaint by laughing at him. According to Plaintiffs, only the City Council for the City of Northport could change the Northport Fire Department's military leave policy. As a result of this change, Hemphill has had to use his sick days and vacation days to fulfill his National Guard duties. Hemphill alleges that the change in this policy led the Mayor of Northport to order a special investigation into Chief Marshall.

### c. Byron Claybrook

Claybrook, who is Caucasian, brings an additional claim against Defendants for harassment. According to Plaintiffs, since the NFO was formed a substantially higher number of its members have been given promotions over local union members regardless of the NFO members' qualifications. As a result, Claybrook filed a grievance alleging that he and other well-qualified candidates were not being promoted because they were not members of the NFO.

Claybrook had been promoted in the past, but he developed a conflict with Scott Collins ("Collins"), the City's previous administrator. Collins told Claybrook that he would have him terminated and then followed through with this threat. When

the Civil Service Board held hearings on Claybrook's termination, it determined that Claybrook was improperly terminated. Claybrook was told he would be reinstated to his most recent position, but this did not occur. Collins is also alleged to have issued a memorandum stating that Claybrook was ineligible for promotion upon his return. Since this incident, Claybrook has sat for the promotional exam multiple times and has scored highly each time, but he has not been promoted.

### d. Michael Carter

Carter, who is African American, alleges that Defendants in addition to retaliating against him unlawfully discriminated against him due to his race. Carter was hired by the Northport Fire Department in 2000 and currently serves as a Captain. Carter alleges that since 2016 he has been subject to verbal abuse from subordinates who are NFO members. In one incident, Lt. Aultman, a NFO member, used obscene language in front of other firefighters while speaking about Carter's decision. Carter asked Lt. Aultman if he had a problem that he wanted to discuss, but Lt. Aultman said no. Lt. Aultman was then reported to the shift supervisor Battalion Chief Ricky Mills ("Mills") for his use of language. Mills told Carter that he spoke to Chief Marshall about the incident. Ultimately, Lt. Aultman was not disciplined and his behavior continued. Carter reported this incident to the special investigation.

Additionally, Plaintiffs allege that Defendants rewrote certain standard operating procedures to target Carter. (Doc. 17 ¶ 58.) Specifically, Plaintiffs allege that Chief Marshall made Carter shave his mustache unnecessarily due to an unfounded safety concern regarding Carter's mustache allegedly interfering with the seal of Carter's SCBA facemask. Chief Marshall is alleged to have made this decision without testing to see if Carter's mustache in fact was interfering with the seal of Carter's SCBA facemask. Carter subsequently filed a grievance alleging that the "administration has a record of punishing the ones who don't agree with them." (Doc. 18 at 16.)

### e. Donny Curruth

Plaintiffs allege the following facts regarding Curruth's treatment by Defendants. Curruth[4] was hired by the Northport Fire Department in 2000 and currently serves as a Lieutenant. According to Plaintiffs, Curruth was improperly issued a corrective action when a passport, a velcro card used to help list items and ensure organization when fighting a fire, was lost during the shift before his shift. Although the administration, including Chief Marshall, knew about the lost passport and knew that a new one would be issued first thing the next morning, they issued a corrective action against Curruth, and pressured him to take responsibility for the

---

[4] Plaintiffs do not provide any factual allegations regarding Curruth's race.

lost passport. Curruth alleges that after this incident he was subject to additional corrective actions. Accordingly, Curruth filed a grievance with the special investigation. After Curruth filed this grievance, Chief Marshall began to move Curruth between different stations without explanation.

### f. Jerry Pruitt

Plaintiffs have made the following allegations regarding Defendants' treatment of Pruitt. Pruitt, who is Caucasian, was hired in 2000, and currently works as a Captain and Paramedic as well as a local Union representative at the Northport Fire Department. Pruitt alleges that he has been subjected to harassment at the Northport Fire Department because he is not a member of the NFO.

Pruitt alleges that although he has sat for numerous promotion exams since 2014, he has not been promoted. Specifically, Pruitt alleges that in February 2015, Chief Marshall told him, contrary to the Northport Fire Department policies, that he could not use his 2014 test scores to stand for promotion. Pruitt alleges that as a result of Chief Marshall's actions less qualified members of the NFO have been promoted over him.

### g. Cory Patterson

In support of Patterson's claims, Plaintiffs allege the following facts. Patterson, who is Caucasian, was hired in 2000 and currently is a Sergeant at the

Northport Fire Department. In June 2017, Patterson received notification that he was the subject of a harassment complaint. According to Plaintiffs, the harassment complaint was fabricated by Chief Marshall and another officer to harass Patterson because he is not a NFO member. Patterson generally alleges that he too was harassed because he was not a NFO member.

In July 2017, Patterson tried to join the NFO. However, Patterson was told that union members would not be allowed to join the NFO because "Union-By-Laws would not permit union members to join." (*Id.* ¶87.) Patterson alleges that union members are in fact allowed to join the NFO, but that he and other union members have continually been denied membership to the NFO.

### h. Todd Burroughs

The facts alleged in support of Burroughs's claims are as follows. Burroughs, who is Caucasian, was hired in 1998. Burroughs is a Lieutenant at the Northport Fire Department. Burroughs alleges he has been subjected to harassment since 2015 because he is not a member of the NFO. As an example of this harassment, Burroughs alleges that he was improperly reprimanded for wearing the wrong training pants. According to Burroughs, the pants he was wearing at the time were in fact the correct pants. Burroughs alleges that NFO members, who were wearing

the same pants as him, were not disciplined by Chief Marshall for wearing these pants.

Burroughs also alleges that he was once asked to conduct a training exercise twice in one day, even though protocol only allowed an employee to complete one training session a day. Chief Marshall is alleged to have made Burroughs redo his training because he could not hear Burroughs on the radio. According to Burroughs, other firefighters that had not been heard on the radio by Chief Marshall did not have to redo their training. On the same day Burroughs had to do the extra training, he was sent out on an apartment fire. A few days later Chief Marshall called Burroughs into his office to discuss a complaint that was made about Burroughs work as a firefighter. The name of the complaining officer was never revealed and it was the first complaint Burroughs had against him. Burroughs alleges the complaint was fabricated by Chief Marshall to harass him because he was not a member of the NFO.

## II.  STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor &*

*Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

As a general rule, "[t]he scope of review must be limited to the four corners

of the complaint" because this Court is required "to accept the allegations in the

complaint as true." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Other materials attached to a defendant's motion to dismiss may be considered only

if (1) the plaintiff refers to the document in the complaint; (2) the document is central

to the plaintiff's claim; and (3) the authenticity of the document is not in dispute.

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per

curiam) (permitting consideration of insurance policy). The fact that a complaint

may "refer[] to the existence" or "rel[y] on the effect" of a particular document

does not make that document central to the plaintiff's claim. *Id.*

## III.  DISCUSSION

Plaintiffs bring claims against Defendants for race discrimination, harassment,

retaliation, and negligent hiring. In a nutshell, Plaintiffs' Amended Complaint seeks

vindication for alleged mistreatment by Chief Marshall, the City of Northport, and

the NFO because Plaintiffs were not members of the NFO. However, in regard to

Plaintiffs' allegations of mistreatment and harassment based on their non-

membership in the NFO, Plaintiffs have not alleged facts plausibly indicating that

(1) membership in the NFO is influenced by a protected characteristic, or (2) that the NFO members' alleged harassment or discriminatory treatment was targeted at non-members due to a protected characteristic. Consequently, Plaintiffs have not alleged sufficient facts to plausibly indicate that the alleged discrimination or harassment that they allegedly suffered due to their non-membership in the NFO was due to a protected characteristic. *See* 42 U.S.C. § 2000e *et seq.*;42 U.S.C. § 1981; *see also Coutou v. Martin Cty. Bd. Cty. Com'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (per curiam). Accordingly, to the extent Plaintiffs' claims are based on actions against them because they are not NFO members, these claims are due to be dismissed as Plaintiffs have failed to allege sufficient facts to plausibly state a claim that is actionable in this Court.[5]

### a. Race Discrimination

Plaintiffs specifically allege that Defendants discriminated against Mitchell, Hemphill, and Carter due to their race. Upon review of the Amended Complaint, Plaintiffs have failed to allege sufficient facts to maintain Hemphill or Carter's race

---

[5] To the extent Plaintiffs' claims regarding the NFO are based on rights of association or non-association under the National Labor Relations Act (NLRA), such claims do not fall within the jurisdiction of this court and are due to be dismissed. *See* 29 U.S.C. § 150, *et seq.*; *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959)("[If] an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.").

discrimination claims.[6] As an initial matter the Court notes that to the extent Plaintiffs' race discrimination claims are based on Title VII, administrative exhaustion bars all but Mitchell's race discrimination claim.[7] Therefore, all but Mitchell's Title VII claims are due to be dismissed for failure to exhaust. Even if a failure to exhaust would not bar Hemphill and Carter's claims under Title VII, the Amended Complaint's factual allegations, or more accurately its lack thereof, are fatal to Hemphill and Carter's race discrimination claims whether brought under Title VII or § 1981.

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State. . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. To state a claim under § 1981, "[a plaintiff] must allege facts establishing: (1) that [he] is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Moore v. Grady*

---

[6]     Plaintiffs' Amended Complaint is unclear as to whether the race discrimination claims are proceeding under Title VII or §1981, or both. Accordingly, the Court analyzes Plaintiffs' race discrimination under both statues.

[7]     Plaintiffs' assertion that Hemphill filed a complaint with the Department of Labor is not due to be considered as it was not alleged in the Amended Complaint. (*Compare* Docs. 17 & 26.)

*Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016) (quoting *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004)).

Title VII similarly prohibits, among other conduct, "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). "To establish a *prima facie* case of racial discrimination, the plaintiff employee must demonstrate that (1) [he] belongs to a racial minority; (2) [he] was subject to an adverse employment action; (3) [his] employer treated similarly situated employees outside [his] classification more favorably; and (4) [he] was qualified to perform the job." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997)).

The Supreme Court in *Swierkiewicz v. Sorema N.A.* has noted that "the *prima facie* cause under *McDonnell Douglas*…is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002). Accordingly, the Eleventh Circuit has repeatedly held that a Title VII claimant does not have to plead a *prima facie* case to survive a motion to dismiss. *See Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008); *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015). Instead, "a complaint need only provide enough factual matter (taken as true)

to suggest intentional…discrimination." *Id.* (quoting *Davis*, 516 F.3d at 974) (internal quotation marks omitted).

Plaintiffs' Amended Complaint fails to allege facts sufficient to establish a *prima facie* case of discrimination or plausibly suggest intentional discrimination against Hemphill or Carter as their "evidence" of racial discrimination is largely limited to the fact that they are African American and Chief Marshall, who allegedly took most of the adverse actions against Plaintiffs, is Caucasian. For example, Hemphill alleges that he was the only African American employee who was eligible for military leave and that Chief Marshall changed the Northport Fire Department's military leave policy to target him. But, the facts alleged fail to provide a plausible basis for the conclusion that this decision was the result of intentional and/or unlawful discrimination based on Hemphill's race.

Similarly, Carter's allegations regarding Chief Marshall's treatment of him are also missing facts plausibly suggesting that this differential treatment was based on race. Although Carter alleges that he was subjected to verbal abuse from subordinates, who were not punished for their insubordination, the Amended Complaint provides no factual allegations regarding the race of these subordinates or

the content of this alleged verbal abuse such that the Court could conclude that this verbal abuse was based on his race or permitted because of his race.[8]

Mitchell, however, has alleged sufficient facts to maintain his claim of race discrimination. In particular, Mitchell alleges that he got into a verbal altercation with another Caucasian firefighter, Payne. Even though Payne is alleged to have participated in the altercation and threatened to bust the windows of Mitchell's vehicle, Payne was not punished. In contrast, Mitchell was suspended and docked two days' pay for his role in the altercation. Although Mitchell alleges that this differential treatment was due to Payne's membership in the NFO, the Court cannot at this time dismiss Mitchell's race discrimination claim when he has plausibly alleged facts suggesting, as an alternative basis for Chief Marshall's actions, intentional discrimination and differential treatment based on his race. (Doc. 17 ¶ 16.)

The Court does note that Plaintiffs' response to Defendants' motion to dismiss contains a number of additional facts that may have plausibly suggested intentional discrimination against Carter and Hemphill.[9] But, Plaintiffs may not

---

[8]    Plaintiffs' motion in opposition indicates that these subordinates were Caucasian, but such facts are not included in the amended complaint. (Compare Doc. 17 at ¶¶ 50-56 with Doc. 26 ¶17).

[9]    Examples of factual allegations that Plaintiffs did not include in the amended complaint but made in response to Defendants' motion to dismiss include allegations that:

survive a motion to dismiss by introducing new facts and allegations to support their claims of discrimination in response to Defendants' motion to dismiss as the Court's review is limited to the pleadings. Plaintiffs have amended their complaint, but the Amended Complaint still fails to adequately state a cause of action based on race discrimination in regard to Hemphill and Carter. Accordingly, Hemphill and Carter's claims of race discrimination are due to be dismissed. Mitchell's race discrimination claims remain pending.

### b. Harassment

Plaintiffs do not plead the legal basis for Claybrook's harassment claim.[10] While certain federal statutes like Title VII and § 1981 provide causes of action for harassment that creates a hostile work environment, Claybrook has failed to allege

---

- "Defendants made racial remarks about African Americans towards Mitchell, Hemphill, and Carter" (Doc. 26 ¶ 8.)

- It is well known that there "is racial hostility towards African Americans who are employed with the department" (*Id.* ¶21.)

- "Defendant changed the policy on military leave time solely on the bas[i]s that Hemphill was the only employee who use[d] the policy."(*Id.* ¶ 25.)

- "[R]acial slurs were used in discussion of African American Plaintiffs/employees." (*Id.* ¶ 29.)

- "[A] closed meeting was held and Plaintiff Carter and others were repeatedly referred to by use of racial slurs." (*Id.* ¶ 32.)

[10] Alabama law does not recognize a standalone cause of action for harassment. *See Machen v. Childersburg Bancorporation, Inc.,* 761 So.2d 981, 983 n. 1 (Ala. 1999)

facts that plausibly state a cause of action under any of these statutes for harassment that would be actionable in this Court. To establish a harassment claim, a plaintiff must show that he belongs to a protected group and that the alleged harassment was based on a characteristic protected by Title VII or § 1981. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Here, Claybrook's allegations of harassment are specifically tied to his non-membership in the NFO, which as discussed above has not been plausibly alleged to constitute a protected characteristic. To the extent that all Plaintiffs[11], and not just Claybrook, seek to bring harassment or hostile work environment claims, the Court notes that as with Claybrook they have failed to allege sufficient facts to plausibly indicate harassment based on protected characteristics.

Plaintiffs' factual allegations also fail to plausibly indicate that they suffered unlawful harassment that rose to the level of a hostile work environment. A hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The

---

[11] To the extent that all Plaintiffs', except Mitchell, claims are based on harassment under Title VII, their claims would be barred by a failure to exhaust.

"mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment. . . ." *Id.* at 21. "Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category. . . ." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1301–02 (11th Cir. 2007).

Plaintiffs' Amended Complaint offers a number of bare legal conclusions that Defendants "harassed" them, created a "hostile work environment," and took actions "to harass them" or "to create a hostile work environment." These legal conclusions are unaccompanied by facts plausibly indicating how Defendants acted such that the Court could conclude that such actions plausibly rose to the level of unlawful activity. While some of the Plaintiffs make vague and general allegations that NFO members used offensive language and threatened them, these allegations are unaccompanied by any indications as to the contents of these alleged statements. Without any indication as to the contents of these statements, Plaintiffs' allegations of the use of offensive language and threats do not plausibly indicate unlawful harassment because they are not alleged to be based on a protected characteristic.

*See Baldwin*, 480 F.3d at 1301–02. Accordingly, Plaintiffs' harassment claims are due to be dismissed.

### c. Retaliation

To establish a claim for retaliation, a plaintiff must plead that (1) he was engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). "An employee is protected from discrimination if (1) he has opposed any practice made an unlawful employment practice by this subchapter (the opposition clause) or (2) he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter (the participation clause)." *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).

An adverse employment action need not be as serious as outright termination, but it may include "adverse actions which fall short of ultimate employment decisions," such as written reprimands. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455, 1456 (11th Cir. 1998). The plaintiff's employer must have been motivated by his protected activity in issuing the discipline for a causal link to exist. *Booth v. Pasco Cnty., Fla.*, 757 F.3d 1198, 1207 (11th Cir. 2014) ("Title VII retaliation claims

require proof that the desire to retaliate was the but-for cause of the challenged employment action." (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)). A plaintiff may allege a claim for retaliatory hostile work environment. *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012) (per curiam) (recognizing cause of action for retaliatory hostile work environment).

Plaintiffs allege that Defendants retaliated against them and refused to promote them because they participated in the special investigation of Chief Marshall. Plaintiffs' allegations are due to be rejected because they have failed to allege facts that plausibly indicate that they participated in protected activity under Title VII. Specifically, Plaintiffs' grievances submitted to the special investigation, which are incorporated by reference into the Amended Complaint, and Plaintiffs' allegations regarding the special investigation could not plausibly be construed as protected activity. Neither the grievances nor the facts alleged by Plaintiffs plausibly indicate that Plaintiffs had a good faith, objectively reasonable belief that they were opposing any practice made unlawful under Title VII through the special investigation or that Plaintiffs were participating in a protected activity through the special investigation. *See E.E.O.C. v. Total Sys. Servs., Inc,* 221 F.3d 1171, 1174 (11th Cir. 2000); *Clover*, 176 F.3d at 1351. Accordingly, Plaintiffs' retaliation claims related to the special investigation are due to be dismissed.

To the extent Plaintiffs may in fact be seeking to bring a claim for retaliation based on their filing of this suit, such a claim is also due to be dismissed. Arguably, Plaintiffs' filing of and participation in this suit could be considered protected activity as at least part of the claims in this action are based on allegations of unlawful employment actions under Title VII or § 1981. Plaintiffs have not, however, alleged sufficient facts to indicate that they were subject to what could plausibly constitute adverse actions or unlawful harassment as a result of filing this suit. In particular, the Court notes that Plaintiffs' allegations as to retaliation for the filing of this suit are limited to the legal conclusion that since this suit has been filed each Plaintiff has been subject to "harassment and intentional infliction of emotional distress[]." This legal conclusion is not due to be accepted as true, especially considering the lack of factual allegations offered by Plaintiffs to support this assertion. The Court notes that it cannot find that unknown alleged actions plausibly constituted actionable harassment or intentional infliction of emotional distress.

Plaintiffs' allegations regarding the posting of a news article concerning this suit at Northport Fire stations and Chief Marshall's comment in response to these postings do not save their claim. Plaintiffs have not alleged sufficient facts to indicate that Chief Marshall's ambivalence towards the posting or threat to post more public

news articles about the suit could plausibly rise to the level of an adverse action. Accordingly, Plaintiffs' retaliation claims are due to be dismissed.

However, to the extent that Mitchell is attempting to bring a retaliation claim under Title VII for the filing of his EEOC charge; the Court finds upon review of the amended complaint that Mitchell has plead sufficient facts to state a claim for retaliation.[12] Accordingly, Mitchell's Title VII retaliation claim is not due to be dismissed at this time.

### d. Negligent Hiring

To establish a negligent hiring claim, Plaintiffs must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Portera v. Winn Dixie*, 996 F.Supp. 1418, 1437 (M.D. Ala. 1998). *See Gilmer v. Crestview Mem. Funeral Home, Inc.*, 35 So.3d 585, 596 (Ala. 2009) ("To prove a claim of negligent [hiring], a plaintiff must show that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent."). "A party alleging negligent . . . hiring must also prove the underlying wrongful conduct of employees." *Voyager Ins. Companies v. Whitson*, 867

---

[12]     Defendants concede as much in their reply brief when they state that "Mitchell has a cognizable retaliation claim under Title VII."(Doc. 28 at 6.)

So.2d 1065, 1073 (Ala. 2003); *Jones Exp., Inc. v. Jackson*, 86 So.3d 298, 305 (Ala. 2010) ("[I]mplicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee′s incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff′s injury."). Plaintiffs' allegations concerning Chief Marshall's fitness, the City of Northport's failure to investigate such fitness, and the City of Northport's subsequent investigation thereto fail to plead or allege an underlying tort or sufficient facts to plausibly indicate that Chief Marshall committed such a tort. Accordingly, Plaintiffs' claim for negligent hiring is due to be dismissed.

### e. Claims against Defendant Chief Marshall

It is unclear what claims Plaintiffs seek to bring against Chief Marshall or whether he is intended by Plaintiffs to be a party in this action as he is named in the caption of the complaint, but not listed as a defendant in the body of the complaint. To the extent Plaintiffs seek to bring suit against Chief Marshall under Title VII, those claims are due to be dismissed as Title VII does not allows for recovery from individual employees. *See Dearth v. Collins,* 441 F.3d 931, 933 (11th Cir. 2006); *Busby v. City of Orlando*, 931 F. 2d 764, 772 (11th Cir. 1991). Individual employees, however, may be liable for violating § 1981. *See Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.

1975).[13] In particular, a supervisor may be held individually liable under § 1981 if he personally participated in the alleged discrimination. *See Burnstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005). Because Plaintiffs specifically allege that Chief Marshall participated in what is alleged to be racially discriminatory behavior towards Mitchell, Mitchell's race discrimination claim against Chief Marshall under § 1981 remains pending. All other claims against Chief Marshall are due to be dismissed.

## IV. Conclusion

For the reasons stated above, the motion (doc. 24) is due to be GRANTED in part and DENIED in part. All Plaintiffs except Mitchell are due to be dismissed from this action as they have failed to state plausible claims for relief against the City of Northport and Chief Marshall. All Title VII claims against Chief Marshall are due to be dismissed. The Court will also dismiss Plaintiffs' claims against Defendant NFO without prejudice pursuant to Fed. R. Civ. P. 4(m). Mitchell's race discrimination claims and retaliation claim under Title VII in regard to his filing of an EEOC charge

---

[13] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

remain pending.[14] An Order consistent with this Opinion will be entered contemporaneously herewith.

        **DONE** and **ORDERED** on July 24, 2019.

L. Scott Coogler
United States District Judge

195126

---

[14]    Defendants Motion to Strike Exhibit H (doc. 29) is due to be GRANTED in part and DENIED in part. Plaintiff has failed to properly redact and remove protected personal information from Exhibit H pursuant to Fed. R. Civ. P. 5.2. Accordingly, the Court strikes docs. 19 & 22. However, because certain excerpts of Exhibit H may be relevant to Mitchell's remaining § 1981 claim against Chief Marshall, Plaintiff is granted leave to re-file Exhibit H at a later stage upon a showing that Exhibit H is relevant to this action. If Plaintiff files another copy of Exhibit H that does not comply with Rule 5.2, it will also be struck.